IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| BRITNEY A CLARK, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:16-CV-00613-CAN |
| | § | |
| v. | § | |
| | § | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Britney A. Clark ("Plaintiff") brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for child's disability benefits and supplemental security income [Dkt 1; Dkt. 19; Dkt. 24]. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **AFFIRMED**.

### BACKGROUND

This is an appeal from a denial of child's disability benefits and supplemental security income (SSI). On June 15, 2012, Plaintiff Britney A. Clark applied for child's disability benefits and SSI [TR at 37, 40-41, 52, 118-130, 138].[1] In her applications, Plaintiff alleged she has been disabled since December 20, 2010, due to clinical depression, anxiety, asthma, migraine headaches, and sinus problems [TR at 137]. Plaintiff's applications were denied initially and upon request for reconsideration [TR 63-87].

---

[1] To qualify for child's disability benefits, a person must be found disabled before she reaches 22 years of age. Plaintiff was age 18 at the time of her application.

ORDER – Page 1

Plaintiff then requested a hearing on the Commissioner's denial before an Administrative Law Judge (ALJ), which was held on February 21, 2014 [TR at 32-62]. Plaintiff, her mother and a vocational expert (VE) testified at the hearing. On January 27, 2015, the ALJ issued a decision denying Plaintiff's applications and finding her not disabled at Step Five of the sequential evaluation process [TR at 9-27]. The Appeals Council declined Plaintiff's request for review [TR at 1-5, 9-27]. Plaintiff has exhausted her administrative remedies and now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited. In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence "means more than a scintilla, but less than a preponderance," *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988), and is "evidence that a reasonable mind would accept as adequate to support the decision." *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. See *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). To that end, the Commissioner is entrusted to make determinations regarding issues, including weighing inconsistent evidence. 20 C.F.R. § 404.1527(c)(2). The Fifth Circuit has expressly held that the ALJ – as fact finder – and

not the Court has the sole responsibility for weighing the evidence. *Muse v. Sullivan,* 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

## FINDINGS OF THE ALJ

### 1. *Sequential Evaluation Process*

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled), the Commissioner follows a five-step process: First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under

the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts initially to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

### 2. *ALJ's Disability Determination*

Here, at step one, the ALJ found that Plaintiff did not meet the insured status requirements of the Social Security Act and further that Plaintiff had not engaged in substantial gainful activity since December 20, 2010, the alleged onset date, and any work done after that date was not performed at a substantial gainful activity level [TR at 12]. At step two, the ALJ determined that Plaintiff had the severe impairments of migraines, obesity and major depressive order [TR at 12]. At step three, the ALJ found that these impairments, or combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [TR at 15]. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform medium work[2] and further:

---

[2] Each of the job classifications in the national economy is broken down into an exertion level: Sedentary, Light, Medium, Heavy, and Very Heavy. 20 C.F.R. § 404.1567. Sedentary, Light, and Medium work are defined as follows:
> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can

(1) Claimant can sit, stand, and/or walk for about 6 hours in an eight-hour workday; (2) She is not limited in pushing or pulling (including the operation of foot and/or hand controls) with the upper and lower extremities; (3) She has no postural, manipulative, visual, communicative, or environmental limitations; (4) From the mental standpoint, claimant retains the ability to learn, understand, remember, and carry out simple instructions and tasks, and in such a work setting and environment: can use judgment in making simple work-related decisions; can respond and relate appropriately with others, such as supervisor and co-works, but is limited to only incidental contact with co-worker and the public; can maintain attention and concentration for at least two hour intervals; and can adapt to and deal with simple changes in work setting and environments [TR at 17]. Continuing the analysis, the ALJ then determined Plaintiff had no past relevant work, but found at step five that Plaintiff's residual functional capacity allowed her to perform work in the national economy, including as an eyeglass packager, semi-conductor loader and hand packager [TR at 25-26]. Based on this determination, the ALJ concluded Plaintiff was not disabled before or after December 20, 2010, through the date of decision [TR at 26].

## ANALYSIS

On appeal, Plaintiff presents three issues for consideration: (1) whether the ALJ erred in assessing Plaintiff's RFC for medium work with mental limitations, including whether the ALJ properly considered Plaintiff's depression and obesity in making the RFC finding, (2) whether proper VE testimony supports the ALJ's Step Five finding, and (3) whether the ALJ was prejudiced [Dkts. 19 at 2; 24 at 1]. The Court has considered each ground for relief in turn, and

---

also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. *Id.*

20 C.F.R. § 404.1567.

concludes the Commissioner's decision to deny Plaintiff's application for benefits was warranted.

### 1. *Whether the ALJ Erred in Assessing Plaintiff's RFC*

Plaintiff appears to allege that the ALJ did not properly consider her depression and/or obesity in assessing her RFC. Residual functional capacity is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1) (2003). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. § 404.1545(a)(3) (2012); SSR 96–8p, 1996 WL 374184, at *1. Moreover, determining a claimant's mental RFC involves consideration and analysis of the evidence and "draw[ing] meaningful inferences and allow[ing] reasonable conclusions about the individual's strengths and weaknesses." *Cline v. Astrue*, 577 F.Supp.2d 835, 848 (N.D.Tex.2008) (citing SSR 85–16 (PPS–120), 1985 WL 56855, at *2 (S.S.A. Nov. 30, 1984)). To reiterate, the ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir.1985). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett*, 67 F.3d at 564.

Here, after making a credibility determination regarding Plaintiff's alleged symptoms and limitations, and evaluating all the evidence of record, the ALJ determined that Plaintiff had the RFC to perform medium work with certain mental limitations: From the mental standpoint,

claimant retains the ability to learn, understand, remember, and carry out simple instructions and tasks, and in such a work setting and environment: can use judgment in making simple work-related decisions; can respond and relate appropriately with others, such as supervisor and co-works, but is limited to only incidental contact with co-worker and the public; can maintain attention and concentration for at least two hour intervals; and can adapt to and deal with simple changes in work setting and environments [TR at 17]. When assessing Plaintiff's RFC, the ALJ fully considered Plaintiff's mental health treatment history, noting that the record evidence first reflected a diagnosis of major depressive order in 2011 [TR at 13, 21, 272-317, 437-454], that Plaintiff's records reflected no treatment for any depressive condition in the year following her alleged onset date until she presented at Collin County MHMR Center on November 1, 2011 [TR at 13, 272-273], that the MHMR records further reflected that medication helped stabilize and improper her mental health condition [TR at 13, 21]. The ALJ further highlighted that Plaintiff only received mental health treatment for about a year and that no mental health records were presented for the years 2013 or 2014 [TR at 21]; and that while Plaintiff testified to suicide attempts and other depressive symptoms her testimony was not entirely credible [TR at 21]. In addition, the ALJ also gave significant weight to the opinion of the state agency medical consultant, Jean Germain [TR 13-14, 23]. Dr. Germain completed a mental RFC assessment in which Dr. Germain assessed Plaintiff as markedly limited in the ability to understand, remember and carry out detailed instructions, but moderately limited or not significantly limited in all other mental activities evaluated [TR at 430-432]. After considering such limitations, Dr. Germain assessed that Plaintiff could understand, remember and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact appropriately with co-workers and supervisors, and respond appropriately to changes in routine work setting [TR at 14,

ORDER – Page 7

432]. State agency medical consultant Susan Thompson later affirmed Dr. Germain's mental assessment [TR at 468-469]. Plaintiff's treatment records as a whole support the ALJ's mental RFC assessment.

Turning to Plaintiff's claim that the ALJ also did not properly consider her obesity. Social Security Ruling (SSR) 02–1P places obese individuals in three categories based on their BMI. SSR 02–1P, 2000 WL 628049 at *2. Level I obesity includes BMIs of 30.0–34.9; Level II includes BMIs of 35.0–39.9; and Level III, or "extreme" obesity, includes BMIs that are greater than or equal to 40. *Id.* Individuals falling in the Level III category are at the "greatest risk for developing obesity-related impairments." *Id.* Obesity must be considered at Steps 2–5 of the sequential evaluation process. *Id.* at *3; *Campos v. Astrue*, No. 5:08–CV–115–C, 2009 WL 1586194 at *3–4 (N.D. Tex. Jun 8, 2009); *Johnson v. Astrue*, No. H–08–3658, 2010 WL 148411 at *17–18 (S.D. Tex. Jan 11, 2010). The ALJ must consider the effects of obesity in conjunction with the other medically determinable impairments. *Thompson v. Astrue*, 232 Fed. App'x 421, 424 (5th Cir. 2007); SSR 02–1P, 2000 WL 628049. When determining a claimant's RFC, the ALJ should assess the "effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02–1P, 2000 WL 628049 at *6. Here, the ALJ properly considered evidence of Plaintiff's obesity: finding Plaintiff suffered from a severe impairment of obesity [TR at 12], had a BMI falling within Level II [TR at 14-16], that Plaintiff did not claim her activities were limited by her obesity [TR at 16], that Plaintiff had not been prescribed medication for any weight problem [TR at 16], and ultimately having considered the totality of the record evidence accounted for her obesity by restricting her to medium work [TR at 15-17].

In sum, the Court finds substantial evidence supports the ALJ's RFC assessment, and that ALJ properly considered Plaintiff's depression and obesity in assessing her RFC.

### 2.   *Whether Proper VE Testimony Supports the ALJ's Findings*

Plaintiff's second point of error is that the ALJ improperly relied on vocational expert testimony in concluding that Plaintiff could perform jobs that exist in significant numbers in the national economy.  The full text of the ALJ's hypothetical, presented to the vocational expert, reads:  [L]et's assume we have a hypothetical individual that has no exertional limiations, however, lets it keep it medium or lower that can sit, stand and/or walk for about six hours in an eight hour workday; that can push/pull with her upper and lower extremities without any limitations; that has no postural, manipulative, visual, communicative restrictions or limitations; that should avoid concentrated exposure to noise and respiratory irritants, fumes, dust, odors, things of that nature; that has no other exertional limitations other than those that I have given you. That from the mental standpoint the individual is able to learn, understand, remember and carry out at least simple work instructions and tasks, and that in such a work setting and environment can use judgment in making work-related decisions; tat [sic] can relate to appropriately to supervisors and coworkers, but let's keep contact with coworkers and public to minimal or incidental.  That can maintain attention and concentration for at least two hour intervals; and that can adapt to and deal with changes in work settings and environments, simple changes in work settings and the environments.  Now, given those restrictions and limitations, could that hypothetical individual perform any jobs that exist in significant numbers in the national economy [TR a 58-59].  The VE testified that such a person could work as person packaging eyeglasses, a semiconductor loader and a hand packager [TR at 59-60].

A vocational expert's testimony based upon a properly phrased hypothetical question constitutes substantial evidence to support the ALJ's Step Five finding. *See Carey v. Apfel*, 230 F.3d 131, 145-147 (5th Cir. 2000). Indeed, so long as the testimony regarding an individual's ability to perform jobs in the national economy comes in response to a hypothetical question that accurately describes the claimant's impairments, the vocational expert's opinion constitutes substantial evidence. *Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002) (in order for the vocational expert's testimony to serve as substantial evidence for the ALJ's decision, the hypothetical question must incorporate all of the limitations recognized by the ALJ,); *Bowling v. Shalala*, 36 F.3d 431, 435–36 (5th Cir. 1994) (stating that the hypothetical question posed to the vocational expert must be consistent with the RFC assessment). Conversely, where a hypothetical omits any mention of a claimant's significant functional limitation that is supported by the medical evidence, an ALJ cannot rely on the vocational expert's response. *Id*.

Here, the limitations in the hypothetical posed to the VE mirrored the limitations of the ALJ's RFC assessment (except that at hearing the hypothetical actually contained an additional limitation related to environmental restrictions). Because the RFC was supported by substantial evidence, the VE's testimony, and the ALJ's reliance on it, were proper.

To the extent Plaintiff asserts she could not, in fact, perform the jobs identified, Plaintiff has failed to meet her burden. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (once the Commissioner has found that work in the national economy was available to the claimant, the burden of proof shifted back to the claimant to rebut this finding).

### 3. *Whether the ALJ Was Biased Against Plaintiff*

In addition to Plaintiff's arguments that the ALJ erred in assessing Plaintiff's RFC and in considering the VE's testimony, Plaintiff further alleges that the ALJ was baised against her,

which resulted in prejudice in the ALJ's decision [Dkt. 19 at 2]. The showing required to prove ALJ bias is a high burden. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). Indeed, ALJ's are presumed to be unbiased. *Rollins*, 261 F.3d at 857; *Valentine*, 574 F.3d at 690. The unbiased presumption can be rebutted only by showing "conflict of interest or some other specific reason for disqualification." *Id.* The United States Supreme Court has stated regarding judicial bias that:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. … Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 550-55 (1994) (observing that remarks by the ALJ during hearing that are critical or even hostile to a party are, alone, ordinarily insufficient to support a bias challenge ); *see also, Johnson v. Colin,* 204 F. Supp. 3d 396 (D. Mass. Sept. 6, 2016) ("For the Court to find bias on ALJ's remarks alone – and not some external factor demonstrating, for example a conflict – the remarks would have to show such a high degree of antagonism that a fair judgment would be impossible."). Accordingly, "'[j]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge 'unless' they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) (quoting Liteky, 510 U.S. 540, 555).

The ALJ, at Hearing engaged in the following colloquy with Plaintiff, in pertinent part:

> Q Why did you try to commit suicide? What was going on in your life?
> A A lot of things. Dealing with my family and –
> Q Like what? Why did you think you needed to get away from everything?
> A I –
> Q Okay. Tell me, what exactly did you do in this attempted suicide?
> A I locked myself in the bathroom and began cutting my wrists.
> Q What did you have to cut your wrists with?
> A A knife.
> Q A knife. And what kind of knife was it?
> A Just a knife.
> Q Well, there's all kinds of knives. Was it somewhat like a kitchen knife?
> A. Yes.
> Q Like you – that you used to eat food, dinner?
> A Yes.
> Q So, just a regular kitchen knife?
> A Yes.
> Q And was it a big one or just a table knife?
> A It was small but it was sharp.
> Q Okay. Did you actually cut yourself?
> A Yes.
> Q What did you cut?
> A My arm.
> Q What part of your arm?
> A My forearm.
> Q Your forearm? And how was that supposed to kill you?
> A I don't know.
> Q Why not your wrist where your veins are?
> A Well, yeah, that part too. It was like the whole thing.

Plaintiff argues that questions such as these about her cutting were improper and reflect that fair judgment was impossible because the ALJ was prejudiced or biased against her [Dkt. 24 at 8-9]. Some of the ALJ's comments to Plaintiff may, or may not, have been discourteous or intimidating depending on how they were delivered at hearing. Nonetheless, the evidence of record is simply insufficient to support a finding that the ALJ's remarks, standing alone, reflected such a high degree of antagonism that remand is required. *See e.g., Sarchet v. Chater*,

78 F.3d 305, 309 (7th Cir. 1996) (finding the ALJ's tone, which suggested a commitment to denial of the plaintiff's claim, to be grounds for a recommendation to assign the case to a new ALJ, but not sufficient to show bias); *see also Berger v. United States*, 255 U.S. 22, 35-36 (1921) (finding bias in the extreme situation where judge made significant anti-German statements and sentenced defendants to twenty years imprisonment in an espionage case against German American defendants).

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED.**

**IT IS SO ORDERED.**
**SIGNED this 18th day of September, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE